# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH (973) 645-4693

BANKRUPTCY JUDGE Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**OCT. 5, 2010**

U.S. BANKRUPTCY COURT

NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

October 5, 2010

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Dean G. Sutton, Esq.　　　　　　　　　　Peretore & Peretore, P.C.
18 Green Road　　　　　　　　　　　　　Frank Peretore, Esq.
P.O. Box 187　　　　　　　　　　　　　　191 Woodport Road
Sparta, New Jersey 07871　　　　　　　　Sparta, New Jersey 07871
*Counsel for Debtors*　　　　　　　　　*Counsel for Creditors*
　　　　　　　　　　　　　　　　　　　*Edward and Barbara Jasovsky*

**Re:　Patrick A. Toriello, Sr. and Lisa M. Toriello, Debtors**
　　　**Case No. 08-18063 (DHS)**

Dear Counsel:

　　Before the Court is a motion by Edward J. Jasovsky, Jr. and Barbara L. Jasovsky, his wife, ("Creditors" or "Jasovskys") seeking leave to file a late proof of claim or, in the alternative, to dismiss the case pursuant to 11 U.S.C. § 1307 or to lift the automatic stay pursuant to 11 U.S.C. § 362. The Debtors, Patrick and Lisa Toriello, ("Debtors") oppose the motion.

For the reasons that follow, the Creditors' motion is denied. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. § 1408. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

The present dispute arises from a 1990 lending agreement between the Creditors and T&B Associates ("T&B"), Marion E. Bartusek ("Bartusek"), and the Debtor, Patrick Toriello, in which the Jasovskys loaned the counterparties $275,000.00 evidenced by a Mortgage Note ("Note"). (Aff. of Colleen Howell in Supp. of Mot. to File a Proof of Claim Out of Time or to Dismiss and/or for Relief From the Automatic Stay, ¶ 2, Exhibit A) (herein "Howell Aff.")  The Note was secured by a Mortgage on real property known as 92 Main Street, Sparta, New Jersey ("Property") given to the Creditors by T&B. (Howell Aff. ¶ 3, Ex. B)  The Debtor and Bartusek executed personal guarantees on the Mortgage. (*Id*. at ¶ 4)

On May 1, 2008, the Debtor and his wife filed a voluntary chapter 13 bankruptcy petition. On their schedules, the Debtors listed Edward Jasovsky as an unsecured creditor, but did not list Barbara Jasovsky. (Cert. of Dean G. Sutton in Opp'n to File Proof of Claim Out of Time or to Dismiss and/or for Relief From the Automatic Stay, ¶¶ 4-5) (herein "Sutton Cert.")  On May 6, 2008, a notice of the bankruptcy filing ("Notice") was sent to Mr. Jasovsky, which contained standard information regarding the meeting of creditors, the claims bar date, and also a notification to creditors that they may want to consult an attorney to protect their rights. (Howell Aff. ¶ 8); (April 8, 2010 Affidavit of Colleen Howell, Exhibit B) (herein "Second Howell Aff.")

I.      **Creditors' Statement of Facts**

Mr. and Mrs. Jasovsky reside together, along with their daughter, Colleen Howell ("Howell"). (Howell Aff. ¶ 10)  Howell has resided with her parents since 2004. (*Id*.)  At the time of filing and throughout the pendency of this case, Howell has handled the Creditors' financial affairs, including the debts owed to them under the loan documents. (Howell Aff. ¶ 7)  Mr. Jasovsky has been incapacitated as a result of several strokes, which predate the filing of the petition. (*Id*.; Letter of Dr. John D. McGraw, Nov. 12, 2009 (herein "McGraw Letter"); Letter of Dr. Bernard Weintraub, Dec. 14, 2009 (herein "Weintraub Letter"))  Mrs. Jasovsky currently suffers from mild memory loss and the early onset of Alzheimer's disease. (*Id*.)  Despite living with the Creditors and maintaining their finances, Howell claims she did not have knowledge of the Notice until sometime in July 2008, when she discovered it "buried in their files." (Howell Aff. ¶ 8)  Howell asserts she immediately contacted the Debtor to question him about the Notice (*Id*. at ¶¶ 8-9)  She states the Debtor told her "that it was his personal bankruptcy and had nothing to do with" the Creditors. (*Id*.)  According to Howell, the Debtor's statements caused her to not seek independent legal advice. (*Id*. at ¶ 8)  She did not consult an attorney until "late 2009." (*Id*. at ¶¶ 8-9)  Mrs. Jasovsky did not file a separate certification of facts to the Court.

## II. Debtors' Disputed and Additional Facts

The Debtors dispute Creditors' version of events. Patrick Toriello insists that the failure to list Mrs. Jasovsky on their schedules was inadvertent. (Cert. of Patrick A. Toriello in Opp'n to File Proof of Claim Out of Time or to Dismiss and/or for Relief From the Automatic Stay, ¶ 7) (herein "Toriello Cert.") He also claims that Howell told him her mother received the Notice and "freaked out." (*Id.* at ¶ 2) He states that he did not tell Howell the bankruptcy "had nothing to do with her parents," but did tell her that it would "negate my personal guaranty." (*Id.*) The Debtor certifies that he "did not advise Mrs. Howell in any way in regard to taking or not taking action" related to his bankruptcy. (*Id.*)

On July 15, 2008, the Court confirmed the Debtors' chapter 13 Plan. The claims bar date was September 8, 2008. The Creditors did not file a timely proof of claim and now seek, fifteen (15) months later, to file a claim out of time.

## DISCUSSION

## I. Motion to File a Late Proof of Claim

Section 502 of the Bankruptcy Code controls the allowance of claims. 11 U.S.C. § 502. Pursuant to § 502(b)(9), a proof of claim must be timely filed by a creditor. The deadline for timely filing is governed by Federal Rule of Bankruptcy Procedure 3002(c), which sets that deadline at "not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code." Rule 3002(c) also specifies six (6) exceptions that allow the Court to extend the deadline.[1] Fed. R. Bankr. P. 9006(b) gives the Court wide discretion to extend filing deadlines under the Code.

---

[1] Fed. R. Bankr. P. 3002(c) specifies only six situations where the court may extend the time to file a proof of claim:
(1) A proof of claim filed by a governmental unit, other than of a claim resulting from a tax return filed under § 1308, is timely filed if it is filed not later than 180 days after the date of the order for relief. A proof of claim filed by a governmental unit for a claim resulting from a tax return filed under § 1308 is timely filed if it is filed no later than 180 days after the date of the order for relief or 60 days after the date of the filing of the tax return. The court may, for cause, enlarge the time for a governmental unit to file a proof of claim only upon motion of the governmental unit made before expiration of the period for filing a timely proof of claim.
  (2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.
  (3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.
  (4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.
  (5) If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

In certain situations, however, the Rules limit the Court's discretion. Fed. R. Bankr. P. 9006(b)(2) and (3). Where a late proof of claim in a chapter 13 case does not fit within one of the narrow exceptions outlined in Rule 3002(c), the claim is barred under Federal Rule of Bankruptcy Procedure 9006(b)(3). *See Russo v. Freda (In re Russo)*, No. 09-3274, 2009 U.S. Dist. LEXIS 113865, at *12 (D.N.J. Dec. 4, 2009) (citing *Pioneer Investment v. Brunswick*, 507 U.S. 380, 389 n.4 (1993)). The Advisory Committee Notes to Rule 9006(b) specifically place chapter 13 cases outside the bankruptcy court's usual discretion to extend filing deadlines for "excusable neglect" pursuant to Fed. R. Bankr. P. 9006(b)(1). *Id.; See also In re Aboody*, 223 B.R. 36 (B.A.P. 1st Cir. 1998) ("'excusable neglect' is not a valid basis to allow proofs of claim beyond the Rule 3002(c) time restrictions in Chapter 13 cases"). "[I]f a rule is included in [Rule 9006(b)(3)], an extension may not be granted under [Rule 9006(b)(1)]." *Russo*, 2009 U.S. Dist. LEXIS 113865, at *12. Therefore, courts must look solely to the exceptions in Rule 3002(c). The only exception that potentially applies to the case at bar is (c)(2), which gives the Court discretion, in certain circumstances, to extend the deadline for creditors who are infants or incompetent. Fed. R. Bankr. P. 3002(c)(2).

Notwithstanding the limitations expressed in Rules 3002(c) and 9006(b)(3), the Court may permit a creditor to file a late proof of claim if failure to so allow would deprive a creditor who did not receive notice of his fundamental due process rights. *In re Collier*, 307 B.R. 20, 25 (Bankr. D. Mass. 2004); *Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network, Inc.)*, 303 B.R. 42, 46 (Bankr. D. Del. 2003). Other courts observe that the "strict time restrictions of *Rule 3002(c)*. . . [assume] that a creditor has received notice." *In re Roberts*, 98 B.R. 664, 666 (Bankr. D. Vt. 1989). The Supreme Court has repeatedly held that notice must be "reasonable calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *See also, e.g., Dusenbery v. United States*, 534 U.S. 161 (2002); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988); (further citations omitted). "Only after a showing of reasonable notice may a creditor's claim be barred." *Collier*, 307 B.R. at 26 (*citing City of New York v. New York, N.H. 7 N.R. Co.*, 344 U.S. 293, 297 (1953).

The Creditors in the instant case seek leave to file their late proof of claim under three distinct theories. The Court will address each in turn.

    **A.**    **Equitable Estoppel**

The doctrine of equitable estoppel is based upon notions of good faith and fair dealing. *Russo v. Freda (In re Russo)*, No. 09-3274, 2009 U.S. Dist. LEXIS 113865 at *21 (D.N.J.

---

(6) If notice of the time to file a proof of claim has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

Dec. 4, 2009) (citing *In re Vision Metals, Inc.*, 311 B.R. 692, 700 (Bankr. D. Del. 2001). As (then) Judge Breyer wrote *in Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.*:

> Traditionally, the doctrine of equitable estoppel operates to preclude a party who has made representations of fact through his words or conduct from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right.

*Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.*, 697 F.2d 1, 4 (1st Cir. 1982).

Accordingly, a party seeking to invoke the doctrine must show: (1) a representation of fact, (2) which the party relied on in good faith, and (3) a resulting detriment to the party as a consequence of the misrepresentation. "There need not be actual intent to defraud or mislead;" rather, "the estopped party need only have intended or expected that another would act based upon his representation." *Collier*, 307 B.R. at 28 (*citing In re DeArakie*, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996)).

In the present case, the Creditors argue that the Debtors should be equitably estopped from objecting to their filing a proof of claim out of time. Howell, on behalf of the Creditors, allegedly approached the Debtor to inquire as to the nature and impact of the bankruptcy case and the terms of the Notice as they related to the Note and Mortgage. ("Howell Aff. ¶ 8) Howell claims the Debtor assured her that the bankruptcy filing had "nothing to do with" the Creditors. (*Id.*) She claims the Creditors relied on this representation and took no action for over a year, until late 2009, well past the claims bar date, and are now faced with losing the Debtors' personal guarantee on the loan. (*Id.* at ¶¶ 8-9)

The Creditors rely on the holding of *In re AMF Bowling Worldwide, Inc.*, No. 01-61119, 2003 Bankr. LEXIS 2184 (Bankr. E.D. Va. Aug. 6, 2003), a chapter 11 case with facts similar to the case now before the Court. It is well established, however, that courts simply cannot apply the usual "excusable neglect" standard of Rule 9006(b)(1) to extend the time for filing a proof of claim under Rule 3002(c) in a chapter 13 case, unless one of the enumerated exceptions applies. *See Russo*, 2009 U.S. Dist. LEXIS 113865 at *16-17; *Gardenhire v. IRS (In re Gardenhire),* 209 F.3d 1145 (9th Cir. 2000); *In re Aboody*, 223 B.R. 36 (B.A.P. 1st Cir. 1998); *Jones v. Arross*, 9 F.3d 79 (10th Cir. 1993). While the Court is mindful of the Creditors' advanced age and circumstances, the Bankruptcy Rules simply do not confer on the Court the discretion to extend the deadline for excusable neglect.

### B. Late Filing under Rule 3002(c)(2) for "Incompetents"

Under Rule 3002(c)(2), the Court has discretion to extend the time to file a proof of claim for an infant or incompetent person, or their representative, if such extension is in the interest of justice and will not cause an undue delay. *Vicenty v. San Miguel Sandoval (In re San Miguel*

*Sandoval)*, 327 B.R. 493 (B.A.P. 1st Cir. 2005). The extension need not be granted during the 90-day period otherwise provided for in Rule 3002(c), but should not "seriously delay administration of the case." 9 *Collier on Bankruptcy* ¶ 3002.03[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). An extension under Rule 3002(c)(2) is permissive, not mandatory. *Id.*; *In re Wilson*, 96 B.R. 257, 263 (B.A.P. 9th Cir. 1988).

The Court will first consider the question of Mrs. Jasovksy's competency. Neither the Bankruptcy Code nor the Rules define "incompetent" and this Court is unaware of any reported cases interpreting the term as used in Rule 3002(c)(2), which states: "[i]n the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either." Fed. R. Bankr. P. 3002(c)(2). Therefore, the Court will look to state law for a definition. New Jersey courts have repeatedly used the definition in New Jersey Statute § 3B:1-2 for the Administration of Estates to define a "mental incompetent." *See Hackensack University Medical Center v. Rossi*, 338 N.J. Super. 139, 147–48 (N.J. Super. Ct. Law Div. 1998) (defining a "mental incompetent" as a person "impaired by reason of mental illness or mental deficiency to the extent that he lacks sufficient capacity to govern himself and manage his affairs").[2] Although N.J.S.A § 3B:1-2 deals with testamentary capacity, the *Rossi* court used it as guidance in the context of tolling the filing of a late claim under the New Jersey Tort Claims Act. *Id.* at 147; N.J. Stat. Ann. § 59:8-8 (West 2010).

New Jersey law requires a person's incapacitation to be established by clear and convincing evidence. *In re J.M.*, 2010 N.J. Super. LEXIS 155 at *16 n.7 (N.J. Sup. Ct. Ch. Div. Feb. 4, 2010) (citations omitted). Clear and convincing evidence "produces in the mind of the trier of fact a belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Jobes*, 108 N.J. 394, 407-408 (1987) (quoting *State v. Hodge,* 95 N.J. 369, 376 (1984)). "Evidence may be uncontroverted, and yet not be 'clear and convincing.'" *Id.* at 408.

The evidence before the Court on this issue takes the form of somewhat conflicting medical opinions. The first opinion letter, dated November 12, 2009, comes from Mrs. Jasovsky's primary care physician, John D. McGraw, M.D., in which Dr. McGraw states that he does not believe Mrs. Jasovksy "lacks sufficient capacity to govern herself [or] manage her own affairs." (McGraw Letter) The second letter, dated December 14, 2009, comes from a neurologist, Bernard Weintraub. Dr. Weintraub examined Mrs. Jasovsky at the referral of Dr. McGraw. (Weintraub Letter) Dr. Weintraub wrote: "I feel the patient does indeed have Alzheimer's disease." (*Id.*) However, he did not directly contradict Dr. McGraw's ultimate conclusion as to her mental competency at that time. (*Id.*) It was nearly four months later, and only after the Debtors opposed the Jasovskys' motion, that Dr. Weintraub submitted an affidavit giving his opinion that Mrs. Jasovsky was indeed incompetent, and "within reasonable medical

---

[2] The statute now uses the term "incapacitated individual" in place of "mental incompetent," but the substantive definition remains the same. N.J. Stat. Ann. § 3B:1-2 (West 2010).

probability that impairment predates May 2008 and continues to this day." (Aff. of Dr. Bernard Weintraub, April 12, 2010)

Taken as a whole, the evidence of Barbara Jasovsky's incompetence is questionable. The Court finds it persuasive that Dr. McGraw, who was Mrs. Jasovksy's personal physician, and with whom she had a preexisting relationship, did not believe her to be mentally incompetent as late as November 2009. Although Dr. Weintraub is a neurological specialist and Dr. McGraw is not, Dr. Weintraub's opinion is based in large part on anecdotal evidence supplied by Howell and Mrs. Jasovsky themselves. (*see* Weintraub Letter)

Second, the Court will consider the "interest of justice" and "undue delay" prongs of Rule 3002(c)(2) in tandem. As with the "incompetency" prong, case law here is sparse. These are fact-sensitive determinations. *San Miguel Sandoval,* 327 B.R. at 514. The Court is concerned with the Creditors' decision to sit on their rights for over a year and a half, questions of competency notwithstanding. The Creditors, or at the very least, Howell, had undisputed notice of the claims bar date with ample time to act prior to expiration. Howell confirms this in her affidavit. (Howell Aff. ¶ 8) Rather than seek independent legal advice, however, Howell claims she chose to rely solely on the Debtor's alleged representations to her. (*Id.*) While Howell claims the Debtor actively mislead her as to the legal effect of the bankruptcy case, the Debtor denies these allegations. (*Id.*; Toriello Cert. ¶ 2)

In addition, the Creditors have never sought to foreclose on the Property, even though some equity appears to remain. (Sutton Cert. ¶ 11) Foreclosure could lead to a recovery for the Creditors that would potentially limit the repercussions resulting from their failure to file a timely claim. Although some evidence was presented regarding environmental damage on the Property, no valuations or appraisals were made to determine the effect on the Property. (Letter to the Court from Frank Peretore, April 15, 2010, Enclosures) Furthermore, the Debtor's certification indicates that the Creditors may still be protected not only by the equity in the Property, but by Ms. Bartusek's personal guaranty. (Toriello Cert. ¶ 2)

Finally, the Court notes that upsetting the chapter 13 Plan at this stage has the potential to derail the chapter 13 Plan and, at the least, cause an undue delay in the administration of the case. The Plan was confirmed in July 2008 and provides for a 100% recovery to the creditors. The Debtors could not make the additional payments to the Jasovskys under the current Plan payments. Accordingly, a modified plan would have to be considered. Based upon the foregoing, the Court does not find that the interest of justice demands an extension under the totality of the facts herein.

    **C.**    **Due Process and Lack of Notice**

As noted above, the limitations on filing late claims under chapter 13 remain subject to fundamental due process rights under the Fifth Amendment of the Constitution. *See In re XO Communs., Inc.* 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003) (citation omitted). In all bankruptcy cases, fundamental rights afforded to creditors include sufficient notice of the bankruptcy proceeding itself. *Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network,*

*Inc.*), 303 B.R. 42, 46 (Bankr. D. Del 2003); *see also In re Trans World Airlines, Inc.*, 96 F.3d 687, 689-90 (3d Cir. 1996) (claims cannot be discharged absent sufficient notice).

Notice is sufficient if it is reasonably likely to inform the creditors of the pending action and allows a meaningful opportunity to respond. *See Collier,* 307 B.R. at 25-26 (citing *Mullane*, 339 U.S. at 314). "Where neither actual nor constructive notice is given to a creditor, the bar date. . . is not effective. " *In re Martini*, 2006 WL 4452974, at*4 (Bankr. D.N.J. 2006) (citing *IRS v. Hildebrand*, 245 B.R. 287, 290 (Bankr. M.D. Tenn. 2000). Where the creditor is known, due process requires actual notice. *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995). Actual notice may be imputed to a creditor when it is received by "someone who has clear authority to act for the creditor." *In re Martini*, 2006 WL 4452974 at *5 (citing *Maldonado v. Ramirez*, 37 B.R. 219 (Bankr. D.V.I. 1984)); *In re Robertson,* 13 B.R. 726, 733 (Bankr. E.D. Va. 1981).

Nevertheless, where notice is initially sufficient it may be vitiated by later events. *See Collier*, 307 B.R. at 25-26. The Court should "look to the totality of the circumstances to determine if notice once given was later obfuscated." *Id.* at 26 (citing *People of the State of Illinois ex. rel. Hartigan v. Peters*, 871 F.2d 1136, 1340 (7th Cir. 1989). This is to prevent subsequent abuse of the bankruptcy process by a debtor who would mislead creditors as to the bar date. *Collier*, 307 B.R. at 26. It is irrelevant whether the debtor designs his actions vis-à-vis the creditor to be intentionally misleading, or whether they just have that effect, so long as the result is to deny the creditor due process. *Id.*

In *Martini*, this Court granted the creditor leave to file a late claim where the notices were sent to a former attorney, with whom the creditor had no ongoing relationship or contact. *In re Martini*, 2006 WL 4452974. In *Russo,* the district court followed the *Martini* case, insofar "as to at least highlight the need to afford creditors due process," when it granted leave to file a late claim where the debtor mailed the notice to an obsolete address of the creditor. *Russo v. Freda*, 2009 U.S. Dist. LEXIS 113865 at *2-4. By contrast, the Ninth Circuit denied a motion to file a late claim where the creditor did not receive any notice of the claims bar date, but did receive a notice of the creditors' meeting. *Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F.2d 1428 (9th Cir. 1990). Other courts have repeatedly bound creditors to a reorganization plan where they had actual notice of a debtor's bankruptcy, despite a failure to receive actual notice of the confirmation hearing. *Ranger Ins. Co. v. Wolcott (In re TLI, Inc.)*, 1998 U.S. Dist. LEXIS 15488, 17-18 (N.D. Tex. 1998) (citing *Sequa Corp. v. Christopher (In re Christopher),* 28 F.3d 512 (5th Cir. 1994); *In re Sam*, 894 F.2d 778 (5th Cir. 1990)).

The present case is distinguishable from *Russo* and *Martini*. Actual notice can be imputed to the Creditors through their daughter, Howell, who was admittedly acting on behalf of her parents. She had moved into the Creditors' home and was handling their financial affairs at the time of filing and throughout this case. (Howell Aff. ¶ 7, ¶ 10) Howell readily admits to receiving notice of the bankruptcy case. (*Id.* at ¶ 8) It is clear that Howell possessed actual knowledge of the Notice well in advance of the bar date. Despite the alleged comments made to her by the Debtor as to the effect of the bankruptcy on her parents, she still had ample opportunity to seek an independent legal opinion before the bar date. As such, the Creditors,

through their representative, Howell, can fairly be said to have received actual notice sufficient to satisfy due process concerns. The totality of the circumstances does not diminish but enforces the effectiveness of that notice.

## II.    Dismissal for Lack of Good Faith

Dismissal of a chapter 13 case is governed by section 1307(c) of the Bankruptcy Code. 11 U.S.C. § 1307(c). The Court may dismiss a case under this section for "cause" if it is in the best interests of the creditors and the estate. *Id.* Section 1307(c) includes a list of actions that amount to "cause," although this list is not exhaustive. *In re Lilley*, 91 F.3d 491 (3d. Cir. 1996. "Cause" may include a lack of good faith by a debtor. *Id.* at 496. "[G]ood faith," however, "is a term incapable of precise definition." *Id.* (quoting *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992). The good faith determination should be based on a totality of the circumstances. *Id.* Relevant factors include: "the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id.* However, a debtor "who simply seeks to benefit from the provisions of the statute should rarely, if ever, be found to be lacking in good faith for that reason." 8 *Collier on Bankruptcy* ¶ 1307.04[10] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

In this case, none of the actions listed in section 1307(c) occurred. In support of their motion to dismiss, the Creditors point to the Debtors' listing of the debt owed to them as "contingent." (Creditors Br., 12) That does not evidence bad faith. The Debtors included the debt owed to the Creditors on their schedules. It was not hidden. Whether contingent or non-contingent, there is nothing in the record to suggest the filing lacked good faith. As such, the Court denies the Creditors' request for dismissal.

## III.    Relief from the Automatic Stay for an Unsecured Creditor

Pursuant to section 362(d) of the Bankruptcy Code, "the court shall grant relief from the stay. . . for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). Although lack of adequate protection is the most common reason for lifting the stay, "cause" is a broader concept that can include lack of good faith, or the necessity of permitting litigation in another forum. 3 *Collier on Bankruptcy* ¶ 362.07[3][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). As such, stay relief may be granted to an unsecured creditor in limited circumstances. *See In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1008-1009 (Bankr. E.D. Pa. 1987) (stay relief can be granted to an unsecured creditor where the debtor engaged in "morally culpable conduct" and the creditor agreed to "pursue the Debtor only to judgment, not through the execution process," so as to lighten the Debtor's burden outside bankruptcy) (citing *In re Turner,* 55 B.R. 498 (Bankr. N.D. Ohio 1985) (RICO action in which creditors agreed to look only to debtor's bonding company); *In re Bock Laundry Machine Co.,* 37 B.R. 564 (Bankr. N.D. Ohio 1984) (products liability action in which creditor agreed to pursue debtor only to extent he was insured); *In re Larkham,* 31 B.R. 273 (Bankr. D. Vt. 1983) (discrimination suit in which plaintiffs sought injunctive relief); and *In re Highcrest*

Page 10
October 5, 2010

*Management Co.,* 30 B.R. 776 (Bankr. S.D.N.Y. 1983) (plaintiffs sought to recover proceeds that debtor held in trust).

The cases cited in *Perlstein Enterprises* all require an unsecured creditor to prove the "hardship to the creditor from being denied an opportunity to pursue the debtor in another chosen forum outweighs the hardship to the debtor if it is forced to litigate out of the bankruptcy-court forum" before granting relief from the automatic stay for cause. *Perlstein Enterprises, Inc.,* 70 B.R. at 1009; *see also In re Todd Shipyards Corp.,* 92 B.R. 600, 1988 Bankr. LEXIS 1759, (Bankr. D.N.J. 1988). The Creditors in this case have failed to accomplish this. There is no litigation currently pending against the Debtors outside of the bankruptcy proceeding. Nor does the Court find any "morally culpable conduct" by the Debtors. The Creditors retain their mortgage lien on the Property and may look there for satisfaction before seeking to hold the Debtor liable on his personal guarantee. As such, the Court denies the Creditor's request to lift the automatic stay.

## **CONCLUSION**

The Creditors' motion to file a late proof of claim or for alternative relief is denied.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

            Very truly yours,

     *s/*  *Donald H. Steckroth*

            DONALD H. STECKROTH
            UNITED STATES BANKRUPTCY JUDGE

Enclosure